```
              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF OHIO
                    WESTERN DIVISION
```

UNITED STATES OF AMERICA         :
                                 : NO. 1:06-CR-00076
                                 :
                                 :
     v.                          : **OPINION AND ORDER**
                                 :
                                 :
STEPHANIE CORSMEIER              :
                                 :
                                 :
                                 :

      This matter is before the Court on Defendant's Motion for New Trial (doc. 67), and the government's Response (doc. 76). The Court held a hearing on Defendant's motion on August 23, 2007, at which time the Court asked the parties to submit supplemental briefs. Consequently, the Court also considers Defendant's Reply in support of their motion (doc. 84), and the government's supplemental brief (doc. 85). For the reasons stated herein, the Court DENIES Defendant's motion.

**I. Background**

      Defendant Stephanie Corsmeier was indicted on June 7, 2006 on eleven counts of conspiracy, mail fraud, wire fraud, and bank fraud, all relating to fraudulent mortgage transactions (doc. 2). In the indictment, the government alleged that Defendant, through her company, American Security Title, engaged in fraudulent mortgage transactions by knowingly submitting fraudulent HUD-1 settlement statements to lenders as part of a larger mortgage fraud conspiracy (doc. 2). During a trial on the merits, which

commenced May 17, 2007, the government presented both documentary evidence and witness testimony to support the charges against Defendant. The government introduced documents including the HUD-1 settlement statements processed through American Security Title, loan applications, down payment checks, and payoff checks, from multiple properties it claimed were involved in the overall mortgage fraud conspiracy. Notably, among the documentary evidence, the government submitted three false HUD-1 settlement statements in government's exhibits 1B, 4B, and 5B, each signed and certified by Defendant as being "true and accurate". The government further presented the testimony of each lender and borrower connected to those three settlement statements, as well as several others, confirming the inaccuracy of these and other documents. Alleged co-conspirators and government witnesses Ike Bronson, Clarence Harris, Scott Johnson each testified about their knowledge of Defendant's involvement in the mortgage fraud scheme.

Defense counsel thoroughly cross-examined each witness, and as part of their case-in-chief, presented the testimony of former American Security Title employees Michelle Hudson and Melissa Owens, who testified to no knowledge of wrongdoing on Defendant's part. Finally, Defendant testified, and denied any involvement in or knowledge of any illegal activity.

On May 25, 2007, after a six-day trial, a jury found Defendant Stephanie Corsmeier guilty on each of the eleven counts of conspiracy, mail fraud, wire fraud, and bank fraud (doc. 62).

Thereafter, on June 1, 2007, Defendant filed a motion for a new trial, submitting two grounds: (1) the Court erroneously admitted cocaine evidence under Federal Rule of Evidence 404(b), and (2) the Court failed to grant a mistrial regarding the government's late disclosure and destruction of Rule 16 discovery and Brady materials (doc. 67). The Court held a hearing on the motion on August 23, 2007, at which time the Court requested the parties submit further briefing on the issue of bad faith and the failure to preserve evidence by the government (doc. 81).

**II. Standard**

In relevant part, Rule 33 of the Federal Rules of Criminal Procedure ("FRCP") states, "[u]pon the defendant's motion the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Civ. Pro. 33.

**III. Discussion**

    **A. Cocaine Evidence**

Defendant's first ground for new trial involves the Court's admission of the testimony of co-conspirator Clarence Harris regarding his supply of cocaine to the Defendant (doc. 67). Defendant was notified about this 404(b) evidence two business days before the trial was scheduled to begin on May 15, 2007, at which time Defendant made a motion to exclude this evidence (doc. 42). The Court held a pre-trial hearing on this issue where both sides questioned Mr. Harris, and the Court issued a ruling admitting the evidence (doc. 52). Defendant now argues two basic points in

regards to this evidence. First, she contends that the evidence was not admitted for a proper purpose under Federal Rule of Evidence 404(b), and second, she argues that the late notice of the evidence requires the grant of a new trial (doc. 67).

### 1. Admissibility Under 404(b)

Federal Rule of Evidence 404(b) prohibits the admission of "other crimes, wrongs, or acts ... to prove the character of a person in order to show that he acted in conformity therewith." Fed.R.Evid. 404(b). However, this evidence may be admitted if the party cites a specific proper purpose for which the evidence is being offered, such as to show motive or intent. Id. The Sixth Circuit has established a three part test to determine the admissibility of evidence under Rule 404(b). United States v. Mack, 258 F.3d 548, 553 (6th Cir. 2001). First, the court must analyze whether there exists sufficient evidence to show that the other act or acts in fact occurred. Id. Second, any evidence of such other act may be admitted only for a proper purpose. Id. Finally, if the evidence may be admitted for a proper purpose, the court must determine whether the "other acts" evidence is more prejudicial than probative under Rule 403. Id. (citing, United States v. Gessa, 971 F.2d 1257, 1261-62 (6th Cir. 1992)).

Defendant argues the cocaine evidence does not meet this standard for two reasons (doc. 67). First, Defendant states that the evidence was not offered for a proper purpose, as required by the second prong (Id.). Defendant argues that Mr. Harris only

-4-

provided testimony about his own motive in supplying Defendant cocaine, not about Defendant's motive (Id.).  Defendant also contends the total value of the alleged cocaine, totaling at most one thousand dollars was not enough to entice Defendant to commit fraud, and was only offered by the government to impugn Defendant's character (Id.).

Next, Defendant argues that the prejudicial effect of this evidence outweighs any probative value (Id.).  Defendant states that particularly in light of the thin evidence of motive, and the inconsistencies of Harris's testimony, the extraordinary prejudice outweighed any probative value (Id.).  Defendant argues that she had no prior record or other evidence of bad character and that this evidence served no purpose other than to make a guilt-by-association link between Defendant and Harris (Id.).  Defendant concludes this evidence was admitted in error which is proper grounds for a new trial under the circumstances of this case (Id., citing United States v. Whitaker, 619 F.2d 1142, 1146-58 (5th Cir. 1980); United States v. Pagan, 721 F.2d 24 (2d. Cir. 1983)).

These issues were considered by the Court after a motion by the Defendant and a lengthy pre-trial hearing, and the Court found the evidence admissible under the 404(b) standard (doc. 52). The arguments raised by Defendant now are no different than those brought before the trial, and therefore the Court's conclusion is the same.  The Court finds that the testimony of Clarence Harris was properly offered as proof of Defendant's motive in helping Mr.

-5-

Harris in the fraudulent scheme. Also, as the Court stated in its previous order "while the Court acknowledges the prejudicial effect that this evidence may have, it does not substantially outweigh the probative value of what the government argues is crucial evidence of Defendant Corsmeier's motivation" (doc. 52). "A district court is granted 'very broad' discretion in determining whether the danger of undue prejudice outweighs the probative value of the evidence." United States v. Vance, 871 F.2d 572, 576 (6th Cir.1989). The Court finds that any prejudice this evidence may have caused was countered by the fact that the Court gave the jury a limiting instruction regarding this evidence both at the time the evidence was presented at trial and in the final instructions to the jury (doc. 61). Thus, the Court finds that there was no error under FRE 404(b) in admitting the testimony of Clarence Harris about providing cocaine to Defendant. [1]

---

[1] Moreover, even if the Court erroneously admitted this evidence, under Sixth Circuit case law, any such error would be considered harmless in light of the other evidence of Defendant's guilt. See United States v. Layne, 192 F.3d 556, 573 (6th Cir.1999) (applying harmless error analysis where government presented other convincing or overwhelming evidence aside from "other acts" evidence). "An error is harmless unless one can say, with fair assurance that the error materially affected the defendant's substantial rights-that the judgment was substantially swayed by the error." U.S. v. Murphy, 241 F.3d 447, 453 (6th Cir. 2001) (citing among others, Kotteakos v. United States, 328 U.S. 750, 765,(1946)). "In determining whether an error is harmless, we must take account of what the error meant to [the jury], not singled out and standing alone, but in relation to all else that happened." Id., (citing United States v. Cowart, 90 F.3d 154, 158 (6th Cir.1996) (citations and quotations omitted)). For reasons articulated infra, Sec. III (B)(3)(ii), the Court finds that the documentary evidence in this

## 2. Timing of the disclosure

Defendant next argues that the government did not give the required reasonable notice of the cocaine evidence, as it came only two business days before trial was schedule to start (doc. 67). While acknowledging that the Sixth Circuit has not specifically defined what is reasonable notice, Defendant argues that she had insufficient time to investigate Harris's allegations, so the two days given here did not constitute reasonable notice (Id.). Defendant states that she believes she could have presented evidence refuting several of Harris's claims, had Defendant been given proper notice (Id.).

In response, the government argues that with the two-day continuance granted by the Court, this evidence was provided to Defendant a week before trial began (doc. 67). The government states that this time, in combination with the pre-trial hearing, constitutes reasonable notice (Id., citing among others, United States v. Ramirez-Krotky, 177 Fed. Appx. 746 (9th Cir. 2006)).

The Court agrees. Rule 404(b) requires that the government provide a defendant with reasonable notice of its intention to introduce evidence of other acts, including a description of the "general nature of any such evidence." Fed. R. Evid. 404(b). The government provided notice of its intent to

---

case overwhelmingly supported Defendant's conviction, and therefore, erroneous admission of this evidence would be harmless.

introduce the cocaine evidence on May 10, 2007, a week before the trial began on May 17, 2007 (doc. 76).  The undisputed representation of the government is that the evidence was disclosed as soon as they were made aware of it (Id.).  Further, during the pre-trial hearing on this evidence, the Defendant had ample opportunity to explore the basis of Mr. Harris's testimony.  The Court finds the one week notice, coupled with the extensive pre-trial hearing on this evidence, constitutes "reasonable notice" under FRE 404(b).

For the above reasons, the Court finds that the admission of this evidence does not warrant a new trial.

### B. Taped Conversations

#### 1. Background

The Defendant's second basis for new trial concerns two incidents where the government failed to disclose two recordings of conversations between government witnesses and Defendant made by the F.B.I. (doc. 67).  First, on the evening of Friday, May 11, 2007, the government was informed of and then disclosed to Defendant that at some point during the investigation the F.B.I. recorded one of its witnesses, Ike Bronson, making a call to Defendant("Bronson tape") (Id.).  Generally, on the tape the voice of Ike Bronson could be heard asking questions to Defendant about the F.B.I. investigation and what Mr. Bronson should do in response, but Defendant's voice was not audible (doc. 76).  This evidence was not turned over pursuant to Defendant's Rule 16

discovery requests (doc. 67). On the morning the trial was scheduled to begin, the Defendant requested a two-day continuance, which the Court granted, to investigate its contents and possibly have the tape's audio enhanced (doc. 76). As part of Defendant's cross-examination of Mr. Bronson, the Bronson tape was played for jury, and the jury was provided with a transcript of the call (Id.).[2]

Second, another government witness, Carmen Goodwin, testified on cross-examination that she also made a call to Defendant that was recorded by the F.B.I. during the course of the investigation (Id.). This evidence was not previously disclosed (Id.). At that time, counsel for Defendant requested a sidebar to inform the Court of the discovery (doc. 67). The Court instructed the defense counsel to proceed with cross-examination of Ms. Goodwin as to other subjects, and that the undisclosed evidence would be addressed over the lunch break (doc. 76). After the lunch break, the attorneys for the government informed the Court that a tape was made with Ms. Goodwin, the government attorneys were not previously aware of its existence, but that the case agents never logged the tape into evidence, and it was essentially irretrievably lost (Id.). The case agents, Special Agents Sean Langford and Tom Nelson, recalled that the tape might have been left in the

---

[2] It should be noted that neither Defendant nor the government focus on the Bronson tape in their arguments regarding this basis for a new trial, therefore the Court does not consider it in its analysis.

-9-

recorder, but that the substance of the conversation was general denials of wrongdoing by Defendant (Id.). The Defendant moved for a mistrial at that time, which the Court denied (doc. 67). However, due to other, unrelated events, the Court struck Ms. Goodwin's testimony (Id.).

At the hearing on the motion, Special Agent Langford testified that when the Goodwin tape was made, he was unable to hear Defendant's side of the conversation, but generally he gathered that Defendant had denied involvement in the alleged crimes (doc. 86). Special Agent Langford further testified that he had failed to follow F.B.I. protocol in recording or preserving the Goodwin tape as evidence by not obtaining the prior written approval of his supervisor, the Assistant United States Attorney ("AUSA") handling the case, or of Ms. Goodwin, by not preserving or listening to the tape after the conversation was recorded, and by not preparing a written report after the completion of the phone call (Id.). However, Special Agent Langford maintained that the destruction of this evidence was due to an honest mistake, and a misunderstanding of F.B.I. protocol (Id.).

Also during the hearing, Defendant proffered the testimony of Attorney Robert Carran, the attorney who represented Defendant during the time both tapes were recorded (Id.). According to Defendant, Attorney Carran met with the AUSA, and Special Agents Sean Langford, Tom Nelson, and John Vorhees on June 3, 2005 (doc. 84). At that meeting, Attorney Carran advised them

that he represented Defendant, they discussed the evidence in the case, and the attorneys engaged in plea negotiations (Id.).  This meeting took place before the Bronson and Goodwin tapes were made (Id.).  Attorney Carran attests that he was never asked permission for the agents to contact Defendant, and that he would not have granted permission had it been requested (Id.).

### 2. Parties' Arguments

Defendant argues that the government's failure to disclose these tapes, particularly the Goodwin tape, constitutes grounds for a mistrial under the holdings in Arizona v. Youngblood, 488 U.S. 51 (1980), and California v. Trombetta, 467 U.S. 479 (1994), which find that there is a Due Process violation when exculpatory evidence is destroyed by the government in bad faith (doc. 67).  Defendant submits that the denials she made on both tapes make the tapes exculpatory evidence (Id.).  Defendant argues that had this evidence been available to present to the jury, there may have been a different verdict (Id.).  Further, Defendant argued at the hearing and in supplemental briefing that bad faith is evident from both the failure of the F.B.I. to follow protocol in recording or preserving the Goodwin tape, as well as by recording Defendant while she was represented by counsel (doc. 86).  Defendant finally argues that the destruction of this evidence, if it does not warrant a new trial on its own, when viewed in concert with the admission of the cocaine evidence, necessitates a grant of a new trial in the interest of justice (doc. 84).

In response, the government argues that this ground for new trial is procedurally barred because it was not effectively preserved at trial (doc. 85). According to the government, Defendant agreed to have the testimony of Carmen Goodwin stricken in lieu of a mistrial (Id.). The government argues that Defendant, having consented to this solution at the time, cannot now claim that it is insufficient (Id.).

However, if the Court finds the issue was not waived, the government makes two alternative arguments against a new trial on this basis. First, the government contends that the Court should evaluate the destruction of the Goodwin tape under the elements of a Brady violation as articulated in Strickler v. Greene, 527 U.S. 263, 281-282 (1999). There, the Supreme Court outlined the elements of a Brady violation as follows: (1) the evidence must have been exculpatory or impeaching, (2) the evidence must have been suppressed by the government, and (3) prejudice must have resulted from the suppression. Id. The government states that "[t]o prove that the right to a fair trial was denied, a defendant must demonstrate that, had the evidence been disclosed, the 'result of the trial would have been different'" (doc. 76, citing Strickler, 527 U.S. at 289). The government argues that, under this standard, the Goodwin tape cannot be considered exculpatory because Defendant merely made general denials of wrongdoing (Id., citing cases for the proposition that evidence that is "merely not inculpatory" is not truly exculpatory, including United States v.

-12-

Hauff, 473 F.3d 1350, 1354 (7th Cir. 1973)). Further, the government contends that even if the tape could be considered exculpatory, the government did not suppress this evidence, because while the tape itself may have been lost, there were witnesses to the phone call that could have testified to the contents of the recording, including the case agents, Special Agents Langford and Nelson, Carmen Goodwin, and Defendant herself (Id.). Finally, the government argues that Defendant cannot satisfy the final prong of the Brady standard, that the result of the trial would have been different, had this evidence been available (Id.).

The government states that this evidence should not be evaluated under the Trombetta/Youngblood standard presented by Defendant, that in order to demonstrate a Due Process violation with respect to alleged exculpatory evidence a Defendant must show it was destroyed by the government in bad faith (doc. 76, citing Youngblood, 488 U.S. at 51). The government notes that this standard only applies to exculpatory evidence that is "permanently lost" and that is of "indeterminate" exculpatory value (Id., citing Trombetta, 467 U.S. at 486; United States v. Jobson, 102 F.3d 214, 216 (6th Cir. 1996)). Under Trombetta, "irreplaceable" evidence is evidence that is "of such a nature that defendant would be unable to obtain comparable evidence by other reasonably available means." Trombetta, 467 U.S. at 489. Therefore, the government argues, this standard does not apply, because while the physical tape was lost, the contents of the tape were known to many, including Carmen

-13-

Goodwin, Special Agents Nelson and Langford, and Defendant herself (Id.).

It should be noted that in her supplemental brief, Defendant rejects the government's contention that there are reasonable alternative means to recover the contents of the Goodwin tape because: 1) Special Agents Langford and Nelson only heard Ms. Goodwin's side of the monitored conversation, and 2) Defendant could not have called Ms. Goodwin to testify as to the substance of the conversation because her testimony was stricken by the Court for unrelated reasons and because when the subject was initially broached, Ms. Goodwin did not even recall the conversation had been recorded (doc. 84).

Nonetheless, the government contends that even if the Trombetta/Youngblood framework applied, Defendant still cannot prevail because she cannot demonstrate that in losing the Goodwin tape, the government acted in bad faith (doc. 76). The government points out that the undisputed testimony of Special Agent Langford was that he accidentally left the tape in the tape recorder, and that his failure to follow protocol was an honest mistake (Id., doc. 85). Finally, the government objects to Defendant's argument that the fact that Defendant was represented by counsel at the time the tapes were made constitutes bad faith, stating that this has nothing to do with the question of whether the tapes were lost or misplaced in bad faith (doc. 85). Nonetheless, the government argues this it acted properly in conducting the monitored phone

calls between Defendant and cooperating government witnesses before Defendant was indicted (Id., citing, among others, McNeil v. Wisconsin, 501 U.S. 171, 175 (1991)).

### 3. Analysis

First, the Court does not agree with the government's contention that Defendant waived this argument by not preserving their objection at trial. In fact, a review of the trial transcript shows the Defendant agreed to have Ms. Goodwin's testimony stricken because Ms. Goodwin spoke with another witness about her testimony during the same lunch break after the existence of the tape was discovered, not in lieu of a mistrial. While the two issues may have been confounded at the time, the Court finds that defense counsel effectively preserved his objection to the Court's decision not to grant a mistrial because of the destruction of the Goodwin tape.

Next, the Court finds that the exclusion of this evidence is properly evaluated under the standard articulated in Youngblood/Trombetta. However, the Court finds that even using the Brady standard presented by the government, a new trial is not warranted.

#### i. Youngblood/Trombetta

As stated above, in order to demonstrate a Due Process violation with respect to alleged exculpatory evidence a Defendant must show the evidence was destroyed by the government in bad faith (doc. 76, citing Youngblood, 488 U.S. at 51). However, this

standard only applies to exculpatory evidence that is "permanently lost" and that is of "indeterminate" exculpatory value. Trombetta, 467 U.S. at 486; United States v. Jobson, 102 F.3d 214, 216 (6th Cir. 1996). Under Trombetta, "irreplaceable" evidence is evidence that is "of such a nature that defendant would be unable to obtain comparable evidence by other reasonably available means." Trombetta, 467 U.S. at 489.

The Court agrees with Defendant in that there is no evidence comparable to the destroyed Goodwin tape. While, as the government argues, both case agents were ready and willing to testify to what they believed were the contents of the tape, they neither heard Defendant's side of the conversation at the time, nor did they listen to the tape after it was made. Further, the Court struck Ms. Goodwin's testimony for unrelated reasons, preventing Defendant from examining her knowledge of the conversation. Finally, Defendant is correct in her argument that her own testimony of the conversation, if she could recall the content, would not be comparable evidence. Therefore, although the Court agrees with the government that a general denial would in fact not constitute exculpatory evidence[3], because the tape was destroyed and cannot be reasonably recreated through testimony, the Court

---

[3] See United States v. Hauff, 473 F.2d 1350, 1354 (7th Cir. 1973); see also United States v. Baker, 1 F.3d 596, 598 (7th Cir. 1993); United States v. Kennedy, 819 F. Supp. 1510, 1519 (D. Colo. 1993) aff'd, 994 F.2d 747 (10th Cir. 1993); United States v. Poindexter, 727 F. Supp. 1470, 1485 (D.D.C. 1989); United States v. King, 928 F. Supp. 1059, 1062 (D. Kan. 1996).

finds this evidence to be both "permanently lost" and of "indeterminate" exculpatory value. Trombetta, 467 U.S. at 486; United States v. Jobson, 102 F.3d 214, 216 (6th Cir. 1996).

Thus, the crux of the Court's decision turns on whether the Defendant has proven bad faith. After reviewing the briefing on this motion, and the transcript of the hearing, the Court finds that Defendant has failed to do so. First, the Court finds the fact that Defendant was represented by counsel at the time the tapes were made to be irrelevant to the issue of bad faith.[4] Whether Defendant was represented by counsel has no bearing on the question of whether the government failed to preserve the Goodwin tape in bad faith.

Next, there is no evidence that the tape was intentionally destroyed or lost, but instead the consistent testimony of Agent Langford is that destruction was a mistake (doc. 86). The Court notes that the failure of the Special Agents to preserve this evidence, follow F.B.I. protocol, and notify Defendant of the recordings evidences sloppy work for which the Court finds no excuse. It strikes the Court that if Special Agent Langford was a new agent, then he would have recently been trained

---

[4] Because the Court finds this argument to be irrelevant to its analysis, the Court need not rule on the correctness of the government's actions in contacting Defendant after becoming aware she was represented by counsel. However, the Court has serious reservations about the propriety of the government questioning someone who is the target of a criminal investigation without counsel present.

in F.B.I. protocol, and should not have made such a glaring series of mistakes regarding the Goodwin tape. However, ultimately, the failures of the government do not amount to bad faith as required by the Youngblood/Trombetta standard.

### ii. Brady

Moreover, the Court finds that even under the Brady standard presented by the government, Defendant cannot show a violation warranting a new trial. As outlined above, pursuant to Brady, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of good faith or bad faith of the prosecution." 373 U.S. at 87. See also Jamison v. Collins, 291 F.3d 380 (6th Cir. 2002). As the Sixth Circuit recently discussed in United States v. Garner, --- F.3d ----, 2007 WL 3274186 (C.A.6 (Ohio)):

> Courts consider undisclosed evidence material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Bagley, 473 U.S. at 682. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. United States v. Hawkins, 969 F.2d 169, 175 (6th Cir. 1992).

As the government states, Defendant does not allege, nor does the Court find "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," Bagley, 473 U.S. at 682. The testimony is that the Goodwin tape contained denials of

involvement by Defendant. While this evidence could certainly have been favorable to the defense, the Court finds that the government presented sufficient documentary evidence to overcome any such denials. Most notable among the documentary evidence, the government produced three fraudulent HUD-1 settlement statements in government's exhibits 1B, 4B, and 5B, each signed and certified by Defendant as being "true and accurate". Additionally, the government presented the testimony of each lender and borrower connected to those documents, confirming that each of the HUD-1 statements certified by Defendant was fraudulent.

The Court finds that this evidence, in concert with the numerous additional incriminating documents and the witness testimony presented by the government, overwhelmingly supports Defendant's conviction. The introduction of the Goodwin tape containing even the most convincing denials of involvement by Defendant would not undermine the accuracy of the documentary evidence presented by the government. Accordingly, the Court finds there is no reasonable probability that the outcome of the proceedings would have been different had the Goodwin tape been admitted. Bagley, 473 U.S. at 682. Thus, a new trial is not proper on this basis.

Likewise, the Court finds that Defendant's assertion that the totality of the admission of the cocaine evidence and the destruction of the Goodwin tape necessitate the vacation of the jury verdict and the grant of a new trial to be without merit.

Again, the Court finds that the documentary evidence in this case overwhelmingly supported Defendant's conviction, and because none of Defendant's arguments attack the authenticity of that evidence, the Court does not find the interests of justice require a new trial.

**IV. Conclusion**

For the foregoing reasons, the Court DENIES Defendant Stephanie Corsmeier's motion for a new trial.

SO ORDERED.

Dated: November 27, 2007      /s/ S. Arthur Spiegel
                              S. Arthur Spiegel
                              United States Senior District Judge